THE WESTERN & SOUTHERN LIFE INS. CO. *v.* SMITH.

(Decided January 18, 1929.)

*Messrs. Martin & Corry,* for plaintiff in error.
*Messrs. Todd, Tehan & Lorentz,* for defendant in error.

KUNKLE, J.   Defendant in error, Anna L. Smith, brought suit against plaintiff in error upon two policies of life insurance.   These two policies were issued by plaintiff in error upon the life of Victor P. Smith, of Golden Gates, Florida, formerly of Washington C. H., Ohio.   The defendant in error, Anna L. Smith, wife of Victor P. Smith, was the beneficiary under both of these policies.   The one policy was in the sum of $280, and the other in the sum of $1,000.

The case was tried in the lower court with the result that defendant in error secured a verdict against plaintiff in error, concurred in by nine members of the jury, for the amount claimed.   Motion for a new trial having been overruled, error is prosecuted to this court.

The case presents an unusually interesting question of fact.   The petition avers that Victor P. Smith died on or about March 23, 1927, at Golden Gates, Florida.   Plaintiff in error admits the issuance of the two policies of insurance upon the life

of Victor P. Smith in favor of his wife, Anna L. Smith, but claims that satisfactory proof of the death of Victor P. Smith has not been furnished, as provided by the policies of insurance.

The only question at issue is whether the death of the assured, Victor P. Smith, has been satisfactorily established by defendant in error. The one policy provides that the insurance shall be paid "after receipt at said office of satisfactory proof of the death of the insured, made in the manner, to the extent and upon blanks furnished by the company, together with a full statement of the nature or character of the claimant's interest and demand." The other policy provides for payment upon receipt by the company "of due proof of the death of Victor P. Smith."

The one policy was issued December 18, 1916, and the other June 8, 1921. There is no dispute about the premiums upon these policies not being fully paid.

Did defendant in error furnish what, under the circumstances, would be equivalent to reasonable proof of the death of Victor P. Smith?

In brief, it appears from the record that Victor P. Smith, on March 23, 1927, at the time of his death or disappearance, was living in Golden Gates, Florida, a suburb of Stuart, Florida; that he was then about 67 years of age; that he and his wife had formerly lived in Washington C. H., but that several years ago he went south on account of his health and his wife subsequently joined him there; that his wife spent the winters in Florida and generally returned to Washington C. H., for the summer; that they made several trips together back

and forth from Florida to Washington C. H., but by reason of his engagements he had not accompanied her during the last visits made to the north; that he was living in a house in Golden Gates, Florida, which he had built, but the title to which was in his wife; that there were two policies of fire insurance on this property, one of which was payable to him and the other to his wife; that they owned a house in Washington C. H., the title to which was in the wife, which property was occupied by the wife during her stay in the north; that the house in Golden Gates, Florida, was a cement house, two stories high, with stairways leading to the ground from the outside of the house; that windows opened from both stories, and those from the upstairs opened out upon a summer porch.

It is admitted that the upper floor of this house in Golden Gates, Florida, was occupied by Victor P. Smith, and the lower part by one George R. Smith, of the same name, but in no way related. The house burned on the night of March 23, 1927, since which time Victor P. Smith has not been seen or heard from, in so far as the testimony discloses, although various efforts have been made by defendant in error, and other interested persons, to locate him and to ascertain whether he is living or dead. Victor P. Smith had been previously married, and his first wife is still living, but the record does not disclose where she resides. Defendant in error, Anna L. Smith, had been previously married, and has two children by such marriage. No children were born from the marriage of defendant in error and Victor P. Smith.

There is some mystery connected with the burning

of this home of Victor P. Smith on the night in question. George R. Smith, who, as above stated, occupied the lower portion of this house, testified that he was awakened some time between 12 and 1 o'clock on the night of March 23, 1927, by smoke in the house; that he called to Victor P. Smith, who was occupying the upper rooms of the house, and that Victor P. Smith came to the window, and, on being told that the house was afire, asked the said George R. Smith to call the fire department. It was necessary for George R. Smith to go some little distance to secure a telephone for the purpose of calling the fire department. His testimony is that he telephoned the fire department and returned to the house, being absent about 10 or 15 minutes, and that upon his return the house was in flames, and he says that he did not see or hear from Victor P. Smith after his return from calling the fire department. The fire department responded, but the house was completely destroyed. There is testimony tending to show that there was some discussion during the progress of the fire about Victor P. Smith being in the burning building. One of the firemen testifies that he and others went to the windward side of the fire and gave special attention to ascertaining whether they could detect an odor of burning flesh. No such odor was perceptible. The next morning the fire department returned and completely extinguished the small amount of fire that still existed and thoroughly examined the ruins of the house. They used rakes and other means of completely turning over all ashes and debris in and around the premises. Their purpose was to ascertain whether they could discover any evidence of human bones or

burned flesh. They all agree that no such evidence was found. The sheriff, constable, and other public officials were also on the job the next morning. The testimony of certain of the firemen, and others, is to the effect that in their judgment no human being was burned in that building on the night in question.

Dr. Dunbrook, of Wittenberg College, was called as an expert witness and testified as to the amount of heat that would be required to consume the bones and flesh of a human body. He states that it would require a temperature above 2500 degrees and perhaps over 3000 degrees Fahrenheit to consume the bones of a human being of the age of Victor P. Smith; that the temperature in a house from a fire of the kind described by the witnesses would probably not reach over 1500 degrees Fahrenheit. The nature of the building was described to Dr. Dunbrook, and he was clearly of opinion that if a human being had lost his life in a fire of that kind there would be traces of such fact.

It is apparent from the record that the public authorities in Florida were of opinion that Victor P. Smith did not lose his life in the fire, and that they suspected George R. Smith of knowing more than he disclosed. They kept George R. Smith under surveillance for some time, and saw that he did not get away from that locality. They grilled him several times, but he still adhered to the story that he saw and talked to Victor P. Smith as soon as he discovered the fire, and that Victor P. Smith requested him to go and telephone the fire department, and that he did not see him after that. George R. Smith's deposition was taken, and he testified to the same state of facts as is contained in the deposi-

tion of the authorities in Florida who conversed with him at the time. He does state in his deposition, however, that Victor P. Smith told him the day before the fire occurred that he was preparing to make a trip to Miami to visit friends.

In examining the ruins of this building the next morning after the fire there was discovered a watch, a knife, a key, and a pistol, which were identified as the property of Victor P. Smith. The fire had not melted these articles. The watch was identified by a jeweler who had fixed the main spring therein a few months before and had made a record of the number of the watch. The other articles were clearly identified as being the property of Victor P. Smith. The testimony of Dr. Dunbrook is to the effect that each of these articles would disintegrate at a considerably lower temperature than would the bones of a human being.

According to the record, Victor P. Smith was a man of good habits, industrious, a veterinarian by profession, but he also engaged in other work in Florida, such as painting, and so forth. So far as is disclosed by the record the relations between himself and his wife were friendly, and nothing had occurred to mar such relations. On the evening before the fire he mailed his wife a letter, which is postmarked March 23d, but the postmaster testifies to seeing Mr. Smith mail this on the evening of the 22d, and that as the mail did not go out until the next day his practice was to postmark all mail the following day. This letter is introduced in evidence and shows a friendly relation between Mr. and Mrs. Smith, and contains nothing that would throw any light upon his disappearance.

Upon being inquired of by the authorities in Florida as to the whereabouts of Victor P. Smith, Mrs. Smith telegraphed, and, ascertaining the situation in Golden Gates, immediately left for Golden Gates, where she made as thorough an investigation of the disappearance of her husband as she was able to do. She called to her aid the public authorities and others, but they were unable to find any trace of Mr. Smith or of his body.

Without further reviewing the facts disclosed by the record we are of opinion that from the established facts the jury was justified in arriving at the conclusion that it is more probable that the said Victor P. Smith is dead than it is that he is alive. At least, the evidence is such that we would not feel warranted in disturbing the verdict upon the ground that the same is against the manifest weight of the evidence.

The most favorable view of the law to which plaintiff in error was entitled was taken by the trial court in the giving of the special instructions asked for by plaintiff in error, as set forth in the bill of exceptions. In addition to these special charges, the trial court, we think, fully and fairly presented the issues to the jury for its consideration.

If this court had authority to make a conditional affirmance of the judgment, it would do so, for the purpose of avoiding any possible injustice to either of the parties; that is, if we were authorized so to do, we would require defendant in error to give bond as against the appearance of said Victor P. Smith, for a period of seven years from March 23, 1927, but our only authority consists in either affirming or reversing the judgment, and, upon a careful re-

view of all the circumstances disclosed by the record, we are of opinion that the judgment should be affirmed rather than reversed.

We have considered all the errors urged by counsel for plaintiff in error in their brief, but, finding no error in the record which we consider prejudicial to plaintiff in error, the judgment of the lower court will be affirmed.

*Judgment affirmed.*

FERNEDING and ALLREAD, JJ., concur.